35692, 35693. HIRSCH et al. v. EQUILATERAL ASSOCIATES et al. (two cases).
35694. GIPSON v. HIRSCH et al.
35695, 35696. GRESHAM et al. v. HIRSCH et al. (two cases).

MARSHALL, Justice.
This was an action by the limited partners in a limited partnership, Equilateral Associates (appellants Hirsch et al.) against Equilateral, its general partners (Gresham and Munchak), Munchak's employee and alter ego with power of attorney (Jones), the alleged agent of Equilateral (Gipson), a corporation of which Munchak was the sole and controlling stockholder (North by Northwest, Inc.), and subsequent purchasers of the partnership property (Immotrans Establishment and Nanz-Stiftung).

The amended complaint alleged substantially as follows. On December 31, 1975, the defendants sold limited partnership interests in Equilateral to the plaintiffs for $53,000, including a $3,000 sales commission to defendant Gipson. The defendants required the plaintiffs to execute a certificate of limited partnership and later a revised certificate, neither of which was witnessed, notarized or recorded. The general partners never conveyed to Equilateral by deed the office building which it was to own and operate, and the defendants continued to operate the building to their own benefit and use; commingled Equilateral's funds with those of other entities, interests and ventures of the defendants; transferred the partnership's funds to be transferred without security and charge to other entities, interests and ventures of the general partners, including defendant North by Northwest, Inc.

It was further alleged that, in mid 1976, the general partners had filed for record a certificate of limited partnership which had been "materially" altered and to which there had been fraudulently affixed signatures of a witness and a notary public. In April of 1977, the general partners negotiated an agreement of sale for the office building, which was the partnership's sole operating asset. As a condition in such contract, the purchaser, defendant Nanz-Stiftung, was obligated to enter into a management and leasing contract with defendant North by Northwest, Inc. Despite the purchaser's awareness, prior to closing, of certain objections to the title, involving the interest of the limited partners in the property and the right of the general partners to convey the property, the purchaser took title, upon an indemnity agreement executed by defendant Munchak, without obtaining the limited partners' consent. The general partners withheld notice of the sales contract for more than three weeks, and a few days before closing, then wrongfully applied the proceeds of the sale by making unauthorized payments and by manipulating the partnership's books. They further failed and refused to make distribution of such proceeds in accordance with Paragraph IX of the certificate of limited partnership. Defendant Nanz-Stiftung conveyed the realty in June of 1978, alleged-

ly for the purpose of attempting to make it appear of record that an innocent purchaser for value had taken the title, thereby insulating Nanz-Stiftung from the plaintiffs' claims.

Count 1 of the complaint sought to recover the consideration paid in cash for the securities, plus court costs and attorney fees, on the ground that the sale of the securities and all subsequent transactions were in violation of the Georgia Securities Act of 1973 (Code Ann. Title 97; Ga. L. 1973, p. 1202 et seq.), in that neither the defendants nor the securities were registered.

Count 2 alleges that the management and leasing contract obtained from defendant Nanz-Stiftung was for the benefit of the other defendants, and that the defendants' actions were in contravention of their confidential relationship and fiduciary duties to the plaintiffs and were done in concert with each other to defraud the plaintiffs. This count prayed for an accounting; the appointment of a receiver "to take charge of, collect, marshal and otherwise take possession and manage the assets of" Equilateral; general damages; punitive damages; and attorney fees.

Count 3 alleges fraud in the illegal and malicious deprivation of the plaintiffs of the property which was the partnership's sole operating asset, asserts that the conveyances of the property were void, and prays for the relief sought in Count 2.

All of the individual parties moved for summary judgment. Case No. 35692 is the plaintiffs' appeal from the grant of partial summary judgment for the defendants. Case No. 35693 is the plaintiffs' interlocutory appeal from the denial of their motion for partial summary judgment. Case No. 35694 is defendant Gipson's appeal from the denial of his motion for summary judgment. Case Nos. 35695 and 35696 are the appeal and cross appeal of defendants Gresham, Munchak and Jones from the denial of their motion for total summary judgment as to Counts 1 and 2.

### Case Nos. 35692, 35693

1. Under Code Ann. § 97-102 (a) (16) (Ga. L. 1973, pp. 1202, 1203; 1974, p. 284; 1975, pp. 928, 930, 932), a

limited partnership interest is a "security" for the purposes of the Securities Act. Code Ann. § 97-103 (a) (Ga. L. 1973, pp. 1202, 1210; 1974, pp. 284, 287; 1975, pp. 928, 932-938; 1979, pp. 1296, 1297) provides: "No *dealer, limited dealer, salesman* or *limited salesman,* as defined by this Chapter, shall offer for sale or sell any securities within or from this State, except in transactions exempt under subsection (a), (b), (f), (g), (h), (i), (k) or (l) of section 97-109, unless he is a registered dealer, limited dealer, salesman or limited salesman pursuant to the provisions of this section . . ." (Emphasis supplied.)

The defendants do not come within any of the categories of persons, as defined by Code Ann. § 97-102, supra, which are required by § 97-103 (a) to be registered. They were not "dealers," which "does not include . . . any person insofar as such person buys or sells securities for his own account, either individually or in some fiduciary capacity, other than as a part of a regular business, and does not include any general partner, or executive officer of any general partner of an issuer or executive officer of an issuer offering or selling securities of such issuer unless *he* is paid a commission for the sale of such securities. Any remuneration paid which is directly related to the sale of securities shall be considered a commission for the purposes of this subsection." (Emphasis supplied.) Code Ann. § 97-102 (a) (5). In the case sub judice, the plaintiffs paid $3,000 to Equilateral for a commission, but it went not to the limited partnership or its general partners, but to defendant Gipson, who was not affiliated with the partnership.

Nor were they "salesmen" under § 97-102 (a) (15), which contains substantially the same exclusion as subsection (5), supra. Neither did the defendants come within the definitions of "limited dealer" or "limited salesmen" in subsections (8) and (9). It follows that the sale of the limited partnership interests was not violative of Code Ann. § 97-103 (a).

Code Ann. § 97-105 (Ga. L. 1973, pp. 1202, 1221; 1974, pp. 284, 297, 299, 300; 1975, pp. 928, 939, 941; 1979, pp. 1296, 1298) provides in part: "It shall be unlawful for any person to offer for sale or to sell any securities to any person in this State unless (i) they are subject to an

effective registration statement under this Chapter, or (ii) *the security or transaction is exempt under section 97-108 or section 97-109, respectively.*" (Emphasis supplied.) The securities were not exempt under § 97-108 (Ga. L. 1973, pp. 1202, 1239; 1974, pp. 284, 304; 1975, pp. 928, 954, 960; 1979, pp. 1296, 1298).

It is undisputed that conditions (1), (2) and (4) of Code Ann. § 97-109(m) (Ga. L. 1973, pp. 1202, 1241; 1974, pp. 284, 305; 1975, pp. 928, 955, 956, 961; 1979, pp. 1296, 1300, 1301) were met. Condition (3) is that "any certificate or certificates representing such securities are marked for a period of one year from the date of such issuance or sale to indicate clearly that they were issued or sold in reliance on this exemption and that they cannot be sold or transferred except in a transaction which is exempt under this Chapter or pursuant to an effective registration statement under this Chapter or is a transaction which is otherwise in compliance with this Chapter . . ." The trial judge properly found that the only document which might come within the description "certificate representing such securities" is the "Certificate and Agreement of Limited Partnership" which was filed and recorded in superior court pursuant to Code Ann. § 75-403 (1) (b) (Ga. L. 1952, pp. 375-377); that that document is an instrument for the formation of a legal entity, defining the rights and limitations of the entity, and in no way "represents" fractional shares of that entity; and that, all the other conditions of subsection (m) having been met, the securities were exempt thereunder, notwithstanding the lack of the legend required by condition (m) (3) on any document. It can be seen that this is a correct holding from the fact that condition (3) refers to the "sale or transfer" of certificates; although the limited partners' interests are assignable under the certificate of agreement here, a certificate on file in superior court cannot be sold or transferred.

Accordingly, the sale of the securities did not violate the provisions of the Security Act as to registration of sellers or securities; there was no civil liability on that theory arising out of the provisions of Code Ann. § 97-114 (Ga. L. 1973, pp. 1202, 1250; 1974, pp. 284, 315; 1979, pp. 1296, 1301, 1302); and the trial judge properly granted

partial summary judgment to the defendants and denied it to the plaintiffs as to Count 1 of the complaint as amended.

2. Count 2 of the complaint as amended involves, in part, a dispute over the terms of the partnership agreement as to the allocation of gains upon the sale of the partnership assets. The distribution provision, paragraph IX of the agreement, provides in pertinent part: "[U]pon the sale of the property and upon termination and dissolution of the limited partnership, all gains, income and losses shall be allocated as follows: First, to the extent of gain and income entirely to the limited partner to the extent of losses previously allocated to them in excess of 2% of the losses of limited partnership, and thereafter, as provided in the schedule above . . . The remaining income, losses, gains and cash flow of the limited partnership shall be allocated to the general partners."

The plaintiffs contend that the above provision should be construed to entitle them to cash proceeds from the sale equal to the amount allocated to them as gain. The defendants, however, contend that the allocation of gain was intended as an accounting provision for tax purposes, and that the plaintiffs' share of the cash of the sale is appropriated to them in the agreement as "cash flow."

The trial judge properly construed the agreement as a matter of law in accordance with the defendants' contention, holding that the essence of the agreement is the sale of net operating losses of a partnership to a group of outside parties. This construction is supported by the showing on the motions for summary judgment to the effect that the plaintiffs had been searching specifically for an arrangement whereby they could acquire net losses for the purpose of offsetting income for tax purposes, and that they were fully aware that the limited partnership they were joining had sustained net operating losses and that the partnership was intending to sell the office building which constituted the sole partnership property. A contrary construction of the agreement, as urged by the plaintiffs, would mean that they had purchased a guaranteed return of over $250,000 for an investment of merely $53,000. Therefore, the trial judge properly

construed the phrase "allocation of gain" to mean a paper allocation of gain, and found that the plaintiffs are entitled to a cash amount equal to 2% of the net equity of the sale.

The plaintiffs are not entitled to an accounting, because their distribution rights are already being fully litigated in this action, and the extraordinary circumstances required to order an accounting are not present. *Saul v. Vaughn & Co.*, 240 Ga. 301 (2) (241 SE2d 180) (1977); *Herring v. Standard &c. Ins. Co.*, 238 Ga. 261 (232 SE2d 544) (1977); *Insurance Center, Inc. v. Hamilton,* 218 Ga. 597 (1, b) (129 SE2d 801) (1963).

3. With respect to Count 3 of the amended complaint, the trial judge properly ruled that, under Code Ann. § 75-419 (Ga. L. 1952, pp. 375, 383), the plaintiff limited partners had only personal property interests in the limited partnership's property; that by the limited partnership agreement, specifically paragraph XVI(a), the plaintiffs contractually agreed that the general partners had the power to sell the partnership's assets without the prior approval or consent of the limited partners; and that whether the agreement was properly notarized is inconsequential. Under Code Ann. § 75-403, supra, (2), "substantial compliance in good faith" meets the requirements of the statute for the valid formation of a limited partnership. The efficacy of a recorded limited partnership agreement does not turn on mere technicalities, the whole tenor of the Uniform Limited Partnership Act being to protect the investors from being held to be general partners and to give third parties notice that some of the partners have limited liability. See *Franklin v. Rigg,* 143 Ga. App. 60 (237 SE2d 526) (1977). Furthermore, the showing on the summary judgment motions was that the plaintiffs considered themselves to be limited partners under the agreement.

4. Since the plaintiffs had no right to interfere in the sale of the property, the trial judge did not err in denying their motion to add as parties defendant the purchaser and subsequent purchaser of the partnership property, to appoint a receiver, and to restrain the further conveyance of the realty. The plaintiffs' remedy is the recovery of that portion of the proceeds of the sale to which they are

entitled under the partnership agreement, which will be determined upon the trial of the case.

Accordingly, partial summary judgment was properly granted to these defendants and denied to the plaintiffs.

*Case No. 35694*

5. For the reasons set forth in Division 1 of this opinion, the trial judge erred in denying the motion for summary judgment of defendant Gipson as to the issue of his registration under the Securities Act, since he was not required by the Act to be a registered salesman, etc., in connection with the sale of these securities, regardless of whether the showing is that he was or was not so licensed. The uncontested facts concerning Gipson's involvement in this transaction are that he was delegated by the plaintiffs, the "Hirsch group," to locate tax losses for them, and that he was not an employee or agent of the partnership.

*Case Nos. 35695, 35696*

6. For the reasons set forth in Division 1 hereinabove, the trial judge erred in denying the motion for summary judgment of defendants Gresham, Munchak and Jones as to their alleged violation of the registration requirements of Code Ann. § 97-103.

7. These defendants contend that the trial judge erred in refusing to hold as a matter of law that the cash flow distribution made to the plaintiffs after the sale of the partnership assets constituted 2% of the net equity of the sale and that the plaintiffs are entitled to no further amounts as proceeds of the sale. In this connection, they urge that it should have been ruled as a matter of law that certain amounts were paid into the partnership as loans to cover operating expenses, and that these amounts should be excluded from the net equity to be divided among the partners. The trial judge properly found, however, that the amount of the payments, their characterization as either loans or contributions to capital, and what parties made the payments and are entitled to credit therefor, were issues of fact for a jury. Similarly, with respect to their contention that payments made as management

fees should be excluded from net equity as a matter of law, the trial judge properly designated as jury issues the amount and reasonableness of such payments, as well as the amount of equity.

*Judgment affirmed in part; reversed in part. All the Justices concur.*

ARGUED JANUARY 16, 1980 — DECIDED MARCH 5, 1980.

*Worozbyt & Nodvin, Marvin P. Nodvin,* for appellants (Case Nos. 35692, 35693).

*Powell, Goldstein, Frazer & Murphy, Jeffrey W. Kelley, Frank Love, Jr., Katz, Paller & Land, G. Roger Land,* for appellees (Case Nos. 35692, 35693).

*G. Roger Land,* for appellant (Case No. 35694).

*Marvin P. Nodvin, Jeffrey W. Kelley,* for appellees (Case No. 35694).

*Frank Love, Jr., Jeffrey W. Kelley,* for appellants (Case Nos. 35695, 35696).

*Marvin P. Nodvin, G. Roger Land,* for appellees (Case Nos. 35695, 35696).